JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.
*1112 **421 In this appeal, we consider whether a warrant application that did not include evidence as to why a specific apartment unit should be searched fell short of establishing probable cause for the search of that apartment, in violation of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution.
Defendant Akeem Boone faced seven charges related to drugs and a weapon found during an August 2012 search of his apartment in Hackensack. He sought to suppress the evidence seized pursuant to a search warrant police had secured for his apartment, Unit 4A, because the warrant application did not include any evidence as to why that specific unit should be searched.
The trial court denied Boone's motion to suppress. It found, based on the totality of the circumstances, that the warrant application sufficiently detailed hand-to-hand transactions, counter-surveillance techniques, and past interactions with Boone to establish probable cause for a search. Subsequently, Boone pleaded guilty to possession of a controlled substance with intent to distribute and a related weapons offense. The Appellate Division affirmed, finding that the application contained "adequate circumstantial indicia" to support issuing a warrant to search Boone's apartment unit.
We disagree. Although police submitted a detailed warrant application that included information about Boone's alleged drug-dealing in the general area, nothing in the application specified how police knew Boone lived in Unit 4A or why that unit-one of thirty units in the building-should be searched. Because the warrant affidavit failed to provide specific information as to why Boone's apartment and not other units should be searched, the warrant application was deficient. Accordingly, we reverse the judgment of the Appellate Division and vacate Boone's convictions.
**422 I.
A.
Over the course of two months during the summer of 2012, the Bergen County Prosecutor's Office Narcotics Task Force set up surveillance of Boone for suspected distribution of crack cocaine, marijuana, and heroin. Police observed Boone engage in drug-related activities in Englewood, River Edge, and Hackensack.
On August 27, 2012, police observed Boone drive to a parking lot in River Edge and retrieve a duffel bag from an unoccupied vehicle. He later drove to an apartment building, 211 Johnson Avenue, where police suspected he lived. Boone did not bring the bag into the thirty-unit building. An hour later, Boone went to retrieve the bag but, noticing the vehicle from which police were monitoring him, returned the bag to the car and drove away. Several times that day, police saw him drive to and from the Johnson Avenue apartment complex.
That same evening, police followed Boone from Johnson Avenue to Main Street in Hackensack, where they observed what appeared to be a hand-to-hand drug transaction between Boone and a man in a black Acura. Police checked the *1113 license plates on the Acura and learned the car was registered to a person who had previously been arrested for narcotics possession. Boone then drove back to the Johnson Avenue apartment complex.
On August 29, 2012, Detective Dennis Conway of the Bergen County Prosecutor's Office applied for a warrant to search Boone, his car, and Unit 4A of 211 Johnson Avenue-identified as Boone's apartment-among other things. Specifically, Conway described Boone's residence as a "multi-family dwelling, constructed of tan brick.... The [principal] entrance for the premise[s] has the number # 211 on the front glass door. There are three (3) steps to get to the glass front doors."
The detective did not note that the building was a thirty-unit apartment building, nor did he provide any details about Unit 4A or how police knew Boone was a tenant in that unit.
**423 In describing the basis of his knowledge, the detective stated that he had been investigating Boone since July 29, 2012. He indicated that he learned that Boone had been arrested in April 2011 in New York for burglary. He wrote that police had observed Boone entering an Englewood apartment where a known drug dealer lived. He also included information about Boone's August 27, 2012 activity. Although the warrant application frequently mentions 211 Johnson Avenue, it never discusses the inside of the apartment building, and it fails to mention Unit 4A other than in passing. However, the detective concluded that "my investigation reveals that Boone is distributing Controlled Dangerous Substances, 211 Johnson Avenue, Apartment 4A, Hackensack."
The trial court subsequently issued a warrant to search Boone, his residence, and his car. Police executed the search warrant on September 7, 2012, and found between one-half and five ounces of cocaine and an illegal handgun in Unit 4A. They then arrested Boone.
B.
In February 2013, a grand jury charged Boone with first-degree operating a facility used to manufacture a controlled substance, contrary to N.J.S.A. 2C:35-4 (count one); second-degree possession of cocaine with the intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and (b)(2) (count two); second-degree possession of a firearm while committing a controlled substance offense, contrary to N.J.S.A. 2C:39-4.1(a) (count three); third-degree receiving stolen property, contrary to N.J.S.A. 2C:20-7 (count four); second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(a) (count five); third-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(a) (count six); and second-degree certain persons not permitted to have a weapon, contrary to N.J.S.A. 2C:39-7 (count seven).
Boone sought to suppress the evidence found in Unit 4A on the ground that the search warrant lacked a factual basis to establish probable cause to search his apartment.
**424 The trial court denied the motion in a written opinion. Although the court acknowledged that police offered no support to justify a search of Unit 4A, it noted that Detective Conway provided extensive details of the police surveillance of Boone. The court found the detective credible. Despite the lack of specificity, the court found that "[t]here is no binding authority that prompts the officer to state a reason why Apartment 4A was the subject of the search warrant and not any other apartment in the complex."
The court noted that police established "suspicious circumstances" based on Boone's furtive movements, hand-to-hand *1114 drug transactions, use of the apartment building-"a common factor in the surveillance"-and erratic driving to justify probable cause to search his apartment unit. In denying the motion, the court found that Boone's activity, coupled with the detective's investigative experience and Boone's criminal history, established probable cause to search Unit 4A.
After the denial of his motion to suppress, Boone pled guilty to second-degree possession of a controlled substance with the intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and (b)(2), and second-degree possession of a weapon while committing a controlled substance crime, contrary to N.J.S.A. 2C:39-4.1(a). He was sentenced to three years of imprisonment with one year of parole ineligibility for the drug offense, to run consecutively with the sentence of five years of imprisonment with three years of parole ineligibility on the weapons offense. In total, Boone faced eight years of imprisonment with four years of parole ineligibility, in addition to concurrent sentences for unrelated offenses.
The Appellate Division affirmed the denial of the motion to suppress in an unpublished opinion. The panel held that the totality of the circumstances presented in the affidavit justified a finding of probable cause for the issuance of the search warrant. Further, the panel noted that "[t]here were adequate circumstantial indicia here to support a reasonable belief that the apartment that was searched was indeed defendant's." Specifically, the panel found that the issuing judge had "ample grounds to anticipate"
**425 that narcotics would be in Boone's apartment "given the furtive conduct of defendant the surveilling officers had observed and his two recent apparent hand-to-hand drug transactions at another location."
We granted certification, 227 N.J. 356, 151 A.3d 964 (2016), and also granted the Attorney General amicus curiae status.
II.
Boone argues that the warrant application was deficient because it listed Unit 4A as Boone's residence in a conclusory manner, without a sufficient factual basis. He argues that police could have easily verified his residence through surveillance or government records. Additionally, he argues that there was similarly no basis to conclude that narcotics were in his apartment because the affidavit never established a nexus linking the hand-to-hand drug transactions with Boone's residence.
Although the State concedes that it did not provide a factual basis to indicate why Unit 4A should be searched, it counters that the totality of the circumstances justified the issuance of a search warrant because surveillance placed Boone at 211 Johnson Avenue before and after drug transactions. The State argues that omission of facts supporting the apartment unit does nothing to diminish the direct evidence of those transactions.
Amicus curiae, the Attorney General, further argues that Boone did not overcome the presumption of validity attached to search warrants. Amicus argues that the omission of facts connected to the apartment unit is a technical error that should not invalidate an otherwise well-supported warrant application.
III.
A.
An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying **426 the trial court's decision, provided that those findings are "supported by sufficient credible evidence in the record." *1115 State v. Scriven, 226 N.J. 20, 40, 140 A.3d 535 (2016). The suppression motion judge's findings should be overturned "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.' " State v. Elders, 192 N.J. 224, 244, 927 A.2d 1250 (2007) (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964) ). However, we owe no deference to conclusions of law made by lower courts in suppression decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516, 126 A.3d 1216 (2015).
B.
The search-and-seizure provision in Article I, Paragraph 7 of New Jersey's Constitution affords a higher level of protection for citizens than the Fourth Amendment of the United States Constitution. See State v. Johnson, 193 N.J. 528, 541, 940 A.2d 1185 (2008). Great protection applies especially in one's home, the sanctity of which "is among our most cherished rights." State v. Bryant, 227 N.J. 60, 69, 148 A.3d 398 (2016) (quoting State v. Frankel, 179 N.J. 586, 611, 847 A.2d 561 (2004) ). Therefore, our courts have announced a preference for law enforcement to secure warrants from detached judges prior to a search, and searches without a warrant are presumed unreasonable unless they fall within an exception to the warrant requirement. Id. at 69-70, 148 A.3d 398 ; see also State v. Edmonds, 211 N.J. 117, 129, 47 A.3d 737 (2012) ; Johnson, 193 N.J. at 552, 940 A.2d 1185.
The application for a warrant must satisfy the issuing authority "that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." State v. Jones, 179 N.J. 377, 388, 846 A.2d 569 (2004) (emphases added) (quoting State v. Sullivan, 169 N.J. 204, 210, 777 A.2d 60 (2001) ). A neutral magistrate, not the police, should determine whether an application for a search warrant is based on sufficient probable cause.
**427 State v. Chippero, 201 N.J. 14, 26, 987 A.2d 555 (2009). The "requirement for a search warrant is not a mere formality," and the showing necessary to secure one should be based "not merely [on] belief or suspicion, but [on] underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated." State v. Novembrino, 105 N.J. 95, 107, 519 A.2d 820 (1987) (brackets removed) (quoting State v. Macri, 39 N.J. 250, 255, 188 A.2d 389 (1963) ).
A search that is executed pursuant to a warrant is "presumptively valid," and a defendant challenging the issuance of that warrant has the burden of proof to establish a lack of probable cause "or that the search was otherwise unreasonable." Watts, 223 N.J. at 513-14, 126 A.3d 1216 (quoting State v. Keyes, 184 N.J. 541, 554, 878 A.2d 772 (2005) ). Reviewing courts "accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." Jones, 179 N.J. at 388, 846 A.2d 569 (quoting Sullivan, 169 N.J. at 211, 777 A.2d 60 (alteration in original) ). Courts consider the "totality of the circumstances" and should sustain the validity of a search only if the finding of probable cause relies on adequate facts. Id. at 388-89, 846 A.2d 569. "[T]he probable cause determination must be ... based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." State v. Marshall, 199 N.J. 602, 611, 974 A.2d 1038 (2009) (quoting Schneider v. Simonini, 163 N.J. 336, 363, 749 A.2d 336 (2000) ).
As this Court recognized in Chippero, the analysis into sufficient probable cause to issue a warrant for an arrest or *1116 for a search involves two separate inquiries. 201 N.J. at 28, 987 A.2d 555. In adopting Professor LaFave's language, we noted that
[t]wo conclusions necessary to the issuance of the [search] warrant must be supported by substantial evidence: that the items sought are in fact seizable by virtue of being connected with criminal activity, and that the items will be found in the place to be searched. By comparison, the right of arrest arises only when a crime is committed or attempted in the presence of the arresting officer or when the officer has "reasonable grounds to believe"-sometimes stated "probable cause to believe"-that a felony has been committed by the person to be arrested.
**428 Although it would appear that the conclusions which justify either arrest or the issuance of a search warrant must be supported by evidence of the same degree of probity, it is clear that the conclusions themselves are not identical.
[ Ibid. (emphases added) (quoting 2 Wayne R. LaFave, Search & Seizure § 3.1(b) at 9-10 (4th ed. 2004) (footnotes omitted) ).]
Ultimately, we determined that "a probable cause determination to search a home where the suspect lives may be valid irrespective of whether probable cause to arrest that particular individual has crystallized." Id. at 31, 987 A.2d 555.
We have upheld the issuance of a search warrant for an apartment unit based only on an informant's description of that unit. Keyes, 184 N.J. at 548-49, 555, 878 A.2d 772. There, police conducted surveillance of a housing project but could not view the entrance of a suspected drug house where an informant engaged in a controlled narcotics buy. Id. at 548-49, 878 A.2d 772. An informant provided the description of a "two (2) story red brick apartment row home .... 236 Rosemont Place is a one story apartment and is on the ground floor." Id. at 549, 878 A.2d 772. The police included the informant's statement in their warrant application, which was granted by the municipal court. Id. at 550, 878 A.2d 772. The Appellate Division reversed the trial court's denial of the motion to suppress, holding that, among other reasons, police did not independently verify the informant's description of the property and did not actually observe him entering the defendant's apartment. Id. at 551, 878 A.2d 772.
In Keyes we reversed, holding that a confidential informant's tip could serve as the basis for issuing a warrant provided that there is "substantial evidence in the record to support the informant's statements." Id. at 555, 878 A.2d 772. Although police could not observe the informant enter the home, under the totality of the circumstances, there was a sufficient basis to issue the warrant based on the controlled drug buy. Id. at 559-60, 878 A.2d 772. We credited the informant's past contributions to drug sale arrests, his description of the defendant, the controlled buy, and the fact that known drug users were entering and exiting the area as contributing to the totality of the circumstances.
**429 Id. at 558-60, 878 A.2d 772. Because police had that corroborating evidence and the informant's tip linking the defendant to the apartment, we held that the warrant had a sufficient basis. Id. at 560, 878 A.2d 772.
IV.
With those principles in mind, we now evaluate the factual basis underpinning the issuing judge's decision to authorize a search warrant for Unit 4A. We conclude that, because there were no facts specifically pointing to that unit, the warrant application failed to establish probable cause.
The State concedes that there are no facts in the warrant application related *1117 to Unit 4A, and the Attorney General agrees that a warrant authorizing a search of an entire apartment complex rather than an individual unit would be invalid. Instead, the State relies on a more general totality-of-the-circumstances argument to justify the issuance of the warrant here. That argument, however, ignores the obligation of courts to independently verify an officer's submissions as to each aspect of the application that must be supported by probable cause for a warrant to issue; we cannot infer facts that are not supported in an affidavit, even something as simple as a missing address.
No independent documentary evidence, such as a voting record, utility bill, or lease, was offered to corroborate Boone's address. No neighbor, informant, or controlled transaction demonstrated that Boone lived in Unit 4A. The State argued that it could have learned Boone's residence from past arrests, but at oral argument defense counsel asserted that Boone's criminal record indicates an Englewood address. Beyond that, nothing in the warrant affidavit ties Unit 4A to the criminal activity alleged elsewhere in the affidavit. Police failed to provide the issuing judge a basis of knowledge from which to conclude that contraband would be found in the particular apartment.
The State, in its submission and at oral argument, has asserted that it presented voluminous evidence based on a month-long **430 investigation that established sufficient probable cause implicating Boone in drug dealing. That may be sufficient to issue a warrant to arrest Boone; however, there was nothing in the affidavit to indicate where Boone lived, how police knew which apartment was his, or how the apartment was connected to his drug dealing. As we recognized in Chippero, 201 N.J. at 30, 987 A.2d 555, probable cause to secure an arrest warrant and probable cause to secure a warrant to search are distinct inquiries. Though Chippero dealt with a lawfully issued search warrant that insufficiently stated a basis for probable cause to arrest, the inverse logic holds true here. Because the warrant application lacks a basis for knowledge of Boone's address, the application in this case is not sufficient to support a warrant to search Unit 4A. That is true regardless of whether the warrant application provided a basis for Boone's arrest because, as noted, probable cause to arrest a suspect is not synonymous with probable cause to search that suspect's apartment. Thus, although police may arguably have demonstrated in the application that they had probable cause to believe Boone had committed a crime, nothing on the face of the warrant application gave rise to probable cause to believe that evidence of any of Boone's wrongdoing might be specifically found in Unit 4A rather than any of the other thirty units in the Johnson Avenue building.
Unlike in Keyes, 184 N.J. at 559-60, 878 A.2d 772, where police included in their warrant affidavit an informant's description from a controlled drug buy directing them to a specific apartment unit, here no evidence points to Boone's apartment unit. Police lacked the facts important in Keyes, namely a reliable informant who could identify where Boone lived. Police here listed Boone's apartment unit as the targeted property in a conclusory manner, without any evidential basis as to how they knew that specific unit in a thirty-unit building contained contraband.
We recognize that the error here was likely an innocent oversight by the police. However, because New Jersey does not recognize an officer's good faith alone as an exception to the **431 warrant requirement, Novembrino, 105 N.J. at 120, 519 A.2d 820, the error demands reversal.
Because the State's warrant application did not include specific evidence as to why *1118 a judge should issue a search warrant for a specific apartment unit, the search warrant issued on the basis of that application was invalid. And, because the police search of Unit 4A was not supported by a valid warrant or justified by an exception to the warrant requirement, the search was unconstitutional. Therefore, this Court suppresses all evidence seized from Boone's apartment. See id. at 148, 519 A.2d 820.
We emphasize that judges issuing search warrants must scrutinize the warrant application and tie specific evidence to the persons, property, or items the State seeks to search. Without that specificity and connection to the facts, the application must fail.
V.
Accordingly, we reverse the judgment of the Appellate Division and vacate Boone's convictions.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion.