**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0823-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROGER E. MEJIA, a/k/a
ROGER E. MEJIA, JR.,

    Defendant-Appellant.

_____

Argued May 13, 2025 – Decided May 23, 2025

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 23-12-0299.

Anthony J. Sposaro argued the cause for appellant.

Shaina Brenner, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Sahil K. Kabse, Acting Sussex County Prosecutor, attorney; Shaina Brenner, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence arising from a motor vehicle stop, defendant Roger Mejia pled guilty to fourth-degree operating a motor vehicle during a license suspension while having been previously convicted of two or more driving while intoxicated (DWI) violations, N.J.S.A. 2C:40-26(b). Defendant was sentenced to six months' imprisonment in the county jail with no probation, with the custodial portion of his sentence stayed pending the outcome of this appeal. Considering the record and applicable legal standards, we affirm.

I.

The following facts are derived from the testimony and evidence adduced at the suppression motion hearing. On April 24, 2023, New Jersey State Troopers Alec Bowie and N. McCabe were on patrol at a firehouse on Route 206 in Andover Township. At approximately 2:22 p.m., Bowie testified that he observed a Dodge RAM truck roll through a stop sign at the intersection of Routes 517 and 206. Bowie stated the vehicle "never came to a complete stop," "disregarded" the intersection, and made a right-hand turn. Bowie explained that he was traveling south and facing the intersection of Routes 206 and 517 when he made the observation. Bowie positioned his marked car behind the truck and effectuated a motor vehicle stop, which was recorded on Bowie's

2

motor vehicle recording camera (MVR) that was mounted on his vehicle. The MVR was moved into evidence by way of stipulation.

Bowie and McCabe approached the driver, identified as defendant, and explained he had been stopped because he did not stop at the stop sign. At the time of the stop, defendant admitted to the State Troopers that his driver's license had been suspended since 2014. State Troopers K. Kaiser and C. McGrath later arrived at the scene and spoke to defendant about his driver's license. The record showed defendant had an expired New York driver's license and that his driving privileges were suspended due to multiple DWI violations. That day, defendant was issued two motor vehicle summonses for driving while suspended, N.J.S.A. 39:3-40, and disregarding a stop sign regulation, N.J.S.A. 39:4-144.

Further investigation revealed that defendant's driver's license was suspended for a second or subsequent DWI violation. As such, on June 20, 2023, defendant was charged with fourth-degree operating a vehicle during a period of license suspension for a second or subsequent violation of N.J.S.A. 39:4-50, in violation of N.J.S.A. 2C:40-26(b), an indictable offense.

On December 7, 2023, a Sussex County grand jury issued indictment number 23-12-0299, charging defendant with one count of fourth-degree

A-0823-24

operating a motor vehicle during a period of license suspension for a second or subsequent violation of N.J.S.A. 39:4-50, in violation of N.J.S.A. 2C:40-26(b).

Defendant filed a motion to suppress the stop of the motor vehicle. Defendant contended the State failed to sustain its burden that Bowie had a reasonable and articulable suspicion defendant committed a motor vehicle violation. On June 4, 2024, the court conducted a suppression hearing and heard oral argument. Bowie was the only witness who testified at the hearing. The court stated it reviewed the MVR prior to the hearing.

On direct examination, Bowie testified that he observed a Dodge RAM truck roll through a stop sign at the intersection of Routes 517 and 206 in Andover Township. Bowie testified that the truck "never came to a complete stop" and made a right-hand turn onto Route 206. Bowie stated that he was traveling southbound when he made this observation and, thereafter, positioned his marked car behind the vehicle.

On cross-examination, Bowie testified that he was located at the firehouse on Route 206 when he observed defendant's vehicle. Bowie acknowledged he might have been parked when he made the observation because that was reflected in the MVR. Bowie testified there was no foliage or obstruction that would have impacted his ability to see whether defendant's vehicle was stopped

4

at the stop sign or not. Bowie stated he could "clearly" see the stop sign from where he observed the violation.

In response to follow-up questions by the court, Bowie admitted he did not remember whether his vehicle was stationary or moving when he made the observation. Bowie also testified that he did not review the MVR before the hearing. In response to a follow-up question by defense counsel, Bowie testified that the MVR "speaks for itself," but he explained the MVR is taken from "a different point of view" and did not capture the entirety of his personal observations.

The court issued an oral decision and written order denying the motion to suppress. Based on Bowie's "unequivocal" recollection and "description" of defendant's vehicle rolling through the stop sign, the court found that the motor vehicle stop was lawful because there was a reasonable and articulable suspicion of a motor vehicle violation to justify the stop. The court credited Bowie's testimony that he was situated approximately 150 feet from the vegetative growth at the intersection, but it was not "overgrown" to "the point of not being able to see through it."

The court determined there was "plenty of light" depicted on the MVR. The court noted it could "clearly see [defendant's] vehicle not come to a stop,"

and that "it keeps moving." Further, based on the court's own review of the MVR, the court found the MVR "clearly supports" Bowie's testimony that defendant's vehicle "continued to move as it went through the intersection." The court noted the MVR shows defendant's vehicle "made the right hand turn from 517 to 206 without coming to a stop." The court found that Bowie is "familiar" with the area where the stop sign is located based on his "time operating in this jurisdiction."

The court candidly criticized Bowie's inconsistent testimony about whether his vehicle was moving or stationary during his observation and the lack of preparation for his testimony. The court noted Bowie was "less than accurate" as to what he could or could not see of the intersection from the firehouse parking lot but was not "prevaricating."

Citing State v. Smith, 251 N.J. 244 (2022), and State v. Atwood, 232 N.J. 423 (2018), the court concluded the State had proved by a preponderance of the evidence that there was a "reasonable and articulable suspicion" to stop defendant's vehicle. The court emphasized Bowie's testimony was "credible" that he had a "better view of things with the natural eye, as compared to trying to discern what one is seeing on an MVR," combined with Bowie's familiarity with the area.

6

On June 17, 2024, defendant filed a notice of appeal challenging the order denying his motion to suppress. We dismissed the notice of appeal as interlocutory. On September 24, 2024, defendant pled guilty to fourth-degree operating a motor vehicle during a period of license suspension for a second or subsequent DWI violation. In exchange for the plea, the State agreed to recommend that defendant be sentenced to 180 days in the county jail with no probation, and dismissal of the other charges.

On November 8, 2024, defendant was sentenced in accordance with the plea agreement. Appropriate fines, penalties, and assessments were also imposed. The remaining charges were dismissed. The court initially granted a stay of the jail portion of defendant's sentence for thirty days.

This appeal followed. Defendant then filed a notice of motion to be admitted to bail pending appeal pursuant to Rule 2:9-4.[1] Following oral

---

[1] Rule 2:9-4 states, [e]xcept as otherwise provided by R[ule] 2:9-5(a), the defendant in criminal actions shall be admitted to bail on motion and notice to the county prosecutor pending the prosecution of an appeal or proceedings for certification only if it appears that the case involves a substantial question that should be determined by the appellate court, that the safety of any person or of the community will not be seriously threatened if the defendant remains on bail, and that there is no significant risk of defendant's flight. Pending appeal to the Appellate Division, bail may be allowed by the trial court; or if denied by the trial court, by the Appellate Division; or if denied by the Appellate Division, by

argument, the court released defendant on his own recognizance and stayed the incarceration portion of his sentence pending the disposition of this appeal.

Defendant raises the following sole point on appeal:

> BECAUSE BOWIE COULD NOT RECALL WHERE HE WAS LOCATED WHEN ALLEGEDLY OBSERVING [DEFENDANT'S] ALLEGED MOTOR VEHICLE INFRACTION, THE STATE CANNOT SUSTAIN ITS BURDEN OF PROOF THAT THIS WARRANTLESS STOP WAS LAWFUL.

## II.

We are guided by the following well-established legal principles. The scope of our review of a trial court's decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)).

We defer to those factual findings because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing

---

the Supreme Court. Pressler & Verniero, Current N.J. Court Rules, Rule 2:9-4 (2025).

court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Accordingly, we "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

A motor vehicle stop is lawful when based on reasonable and articulable suspicion that a traffic or a criminal offense has been or is being committed. Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Amelio, 197 N.J. 207, 211 (2008); State v. Carty, 170 N.J. 632, 639-40 (2002). The State has the burden to prove by a preponderance of the evidence that such suspicion was present. Amelio, 197 N.J. at 211.

To determine whether reasonable suspicion existed, a court must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019). This analysis may also consider police officers "background and training," including their ability to "make inferences from and deductions about the cumulative

9

information available to them that 'might well elude an untrained person.'" Id. at 555 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Defendant contends that because Bowie's testimony was not credible, the State failed to establish he had a reasonable and articulable suspicion of a motor vehicle violation justifying the traffic stop. In support of his argument, defendant argues Bowie "fabricated his testimony twice" because he could not recall whether his vehicle was moving or stationary when he made his observations. Defendant also asserts the MVR cannot justify the motor vehicle stop, which must be based on Bowie's observations. Defendant avers the MVR has no probative value, warranting a suppression of the stop. We disagree.

The court carefully analyzed the evidence, which included Bowie's testimony and the MVR, which was stipulated into evidence, and made detailed credibility findings. The court found the MVR recording is clear that Bowie's vehicle was parked at the time he made the observation of the motor vehicle violation. Moreover, the MVR corroborates Bowie's testimony that defendant's vehicle rolled through the stop sign. While the stop sign cannot be seen in the MVR, Bowie unequivocally testified that he was familiar with the intersection and knew there was a stop sign there.

A-0823-24

We defer to those findings and discern no basis to overturn them as they are supported by sufficient evidence in the record.[2] Saliently, the court made no finding that Bowie perjured himself or knowingly gave a false statement. And, nothing in the record shows Bowie acted in bad faith. Therefore, we are convinced the warrantless stop was lawful, and the court properly denied defendant's motion to suppress.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2). We affirm the conviction and remand solely for the purposes of vacating the stay of execution of the custodial portion of the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[2] This court requested a copy of the MVR and independently reviewed the MVR.

A-0823-24